United States District Court
Southern District of Texas
**ENTERED**
March 25, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MIGUEL HERNANDEZ, | § § § |
| Plaintiff, | § § |
| v. | §   CIVIL ACTION NO. 24-5035 |
| | § |
| GOOSE CREEK CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, *et al.*, | § § § § |
| | § |
| Defendants. | § § |

**MEMORANDUM AND OPINION**

Miguel Hernandez has sued his former employer, the Goose Creek Consolidated Independent School District; the District's police chief, Davis Smith; and the District's superintendent, Randal O'Brien. Hernandez alleges that the defendants retaliated against him for reporting that Smith had falsified firearms training records. The individual defendants move to dismiss the claims against them in their official and individual capacities. (Docket Entry No. 5). Based on the briefs, the record, and the applicable law, the motion is granted. The claims against Smith and O'Brien are dismissed. Hernandez has not moved for leave to amend. If he seeks to do so, he must file his motion with his proposed amended complaint attached no later than April 11, 2025, and the defendants may then respond.

The reasons for this ruling are set out below.

**I.    Background**

Miguel Hernandez worked as a school police officer for the Goose Creek Consolidated Independent School District from June 2020 until he was fired in June 2024. (Docket Entry No. 1-6 at ¶¶ 11, 37). In December 2023, Hernandez conducted firearms training certifications at the

Marksman Shooting range for three District police officers. (*Id.* at ¶¶ 14–15). In February 2024, the police chief for the school district, Davis Smith, accused Hernandez of wrongdoing related to the December 2023 firearms certifications and started an internal investigation. (*Id.* at ¶¶ 17–18).

A few days later, Hernandez submitted a Public Information Act request for "training records for the previous several years" at the Marksman Shooting range. (*Id.* at ¶ 22). According to Hernandez, those records showed that Smith had falsified firearms training records for the District's police officers, and that "over 95 firearms qualification certifications had be[en] falsified in the Department between 2017 and 2023." (*Id.* at ¶¶ 25–27). Hernandez reported his findings to the Texas Commission on Law Enforcement on February 5, 2024. (*Id.* at ¶ 27).

Hernandez alleges that the investigation into his December 2023 firearms training certifications was completed, and he was "unequivocally exonerated," by February 14, 2024. (*Id.* at ¶ 28). The next day, Smith told Hernandez that the investigation had "exonerated [Hernandez] from any wrongdoing" and that the claims against him were "all unfounded." (*Id.* at ¶ 29). Smith then told Hernandez, "I have a boss… and you know as a consequence for a lot of the kind of acting forth stuff that was kind of going around and getting over to HR we have consequences." (*Id.*). Hernandez interpreted this as Smith telling him that "there were consequences for his reporting on the firearms training." (*Id.*). Hernandez alleges that Smith said that the District's superintendent, Randal O'Brien, "was not pleased" with Hernandez's actions and that "Superintendent O'Brien and Chief Smith [had] jointly determined that Hernandez should be punished for 'airing dirty laundry.'" (*Id.* at ¶ 31). Hernandez was reassigned "to a less favorable position within the department." (*Id.* at ¶ 30).

Later that spring, Smith was found to have lied about attending several firearms training sessions, and he resigned. (*Id.* at ¶¶ 32–33). The District subsequently announced that it was

2

restructuring its police department, including getting rid of police sergeants. (*Id.* at ¶¶ 34–35). The following June, O'Brien terminated Hernandez, who was a sergeant at the time. (*Id.* at ¶ 37).

Hernandez sued the District, Smith, and O'Brien in Texas state court, alleging claims under the Texas Whistleblower Act and 42 U.S.C. § 1983 based on the First Amendment. (*Id.* at ¶¶ 40–52). The case was timely removed, and the individual defendants moved to dismiss. (Docket Entry Nos. 1, 5).

## II.     The Rule 12(b)(6) Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

3

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

#### A. The Official Capacity Claims

The individual defendants ask the court to dismiss Hernandez's claims against them in their official capacities because those claims are duplicative of the claims against the District. (Docket Entry No. 5 at 5); *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Hernandez agrees that "official-capacity claims are redundant when the appropriate governmental entity is also named as a defendant." (Docket Entry No. 8 at 16). He does not argue against dismissing the official-capacity claims. *See* (*id.*).

The official-capacity claims against Smith and O'Brien are dismissed, with prejudice, because amendment would be futile.

#### B. The Individual Capacity Claims

The individual defendants have asserted a qualified-immunity defense to the constitutional claim brought against them in their individual capacities. (Docket Entry No. 5 at 3).[1] That assertion shifts the burden to Hernandez to show that Smith and O'Brien, individually, are not entitled to qualified immunity. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "To discharge this burden, [Hernandez] must satisfy a two-prong test." *Id.* (quotation marks and

---

[1] Hernandez does not assert a claim under the Texas Whistleblower Act against the individual defendants in their individual capacities. (Docket Entry No. 21).

4

quoting reference omitted). "First, he must claim that the defendants committed a constitutional violation under current law." *Id.* (quoting reference omitted). "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoting reference omitted).

This court has discretion to go directly to the "clearly established" inquiry. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009); *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Id.* (quoting reference omitted). "To show clearly established law, [a plaintiff] has two paths: (A) []he can identify an on-point case, or (B) []he can satisfy the obvious-case exception." *Henderson v. Harris County*, 51 F.4th 125, 132 (5th Cir. 2022) (per curiam). Hernandez does neither.

Hernandez points to *Lane v. Franks*, 573 U.S. 228 (2014), as the only on-point case.[2] *Lane* answered the question of "whether the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." 573 U.S. at 238; *see also id.* at 241 (holding that the public employee's "truthful sworn testimony at [the] criminal trials [was] speech as a citizen on a matter of public concern").

---

[2] The response also cites a Texas state appellate decision for the proposition that "Texas courts have long punished law-enforcement officers with lengthy prison sentences for falsifying firearms-training certifications." (Docket Entry No. 8 at 14–15) (citing *Chambers v. State*, 523 S.W.3d 681, 684 (Tex. App.—Corpus Christi–Edinburg 2017*), aff'd in part, rev'd in part and remanded*, 580 S.W.3d 149 (Tex. Crim. App. 2019)). That case does not answer the question at issue: whether any reasonable person in Smith's or O'Brien's position would have known that Hernandez's report was speech protected by the First Amendment.

5

The Court emphasized that the "inquiry turn[ed] on the content, form, and context of the speech." *Id.* at 241 (quotation marks and quoting reference omitted). As in *Lane*, the content of Hernandez's speech related to public corruption. However, Hernandez's allegations do not involve truthful sworn testimony. *Cf. id.* (the "form and context" of Lane's speech was "sworn testimony in a judicial proceeding"). Because Hernandez's allegedly protected speech is distinguishable from *Lane* in its form and context, *Lane* did not "place[] the . . . constitutional question beyond debate," as required to overcome qualified immunity. *See Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

Nor is this one of the "exceedingly rare" cases that satisfies the obvious-case exception. *See Henderson*, 51 F.4th at 135 (quotation marks and quoting reference omitted). To be entitled to First Amendment protection, Hernandez must have "spoke[n] as a citizen on a matter of public concern." *See Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014). This "practical" and "fact-intensive analysis" turns on non-dispositive factors, including "the relationship between the speech and the employee's job, whether the speech was made up the chain of command, and whether the speech resulted from special knowledge acquired as an employee." *Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *2 (5th Cir. Jan. 4, 2022) (quoting reference omitted); *see also Gibson*, 773 F.3d at 667–68, 670.

On the one hand, Hernandez's speech clearly involves a matter of public concern. *See Alexander v. Eeds*, 392 F.3d 138, 147 (5th Cir. 2004) ("Reporting serious police misconduct or corruption is an activity with well-established protections."). Hernandez also acquired at least some of the information about which he spoke through the Public Information Act, (Docket Entry No. 1-6 at ¶ 22), which is publicly accessible.

On the other hand, a reasonable person could have concluded that Hernandez's speech was part of his official duties. *See Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir.

2007) ("Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties.").³ Part of Hernandez's job was to conduct firearms certifications at the Marksman Shooting range. (Docket Entry No. 1-6 at ¶¶ 14–15). An *internal* investigation into his execution of those *official duties* led him to request additional training records from the Marksman Shooting range. (*Id.* at ¶ 22). Instead of publicizing his findings, Hernandez reported them to the Texas Commission on Law Enforcement, the state agency that regulates training for law enforcement officers. (*Id.* at ¶¶ 27, 42 & n.1); *cf. Pickering v. Bd. of Educ.*, 391 U.S. 563, 564, 572–74 (1968) (a public school teacher's letter to a newspaper protesting funding allocations at his school was speech as a citizen).

The defendants argue, and Hernandez does not dispute, that his report to the Texas Commission on Law Enforcement was "within the chain of command." (Docket Entry No. 11 at 2–3); *see Gibson*, 773 F.3d at 670. As to the content of the speech, a reasonable person could infer that Hernandez's report "was part-and-parcel of his concerns" about the required firearms training that he was involved in as an employee of the District's police force. *See, e.g.*, *Williams*, 480 F.3d at 694. In other words, although Hernandez acquired at least some of the training records through a public channel, his speech was made internally on matters related to his job duties. These allegations do not clearly establish whether Hernandez was speaking as a citizen or an employee.

Hernandez may have alleged a constitutional violation, but the uncertainty surrounding whether Hernandez was speaking as a citizen or as a part of his official duties precludes a finding

---

³ The response to the motion to dismiss incorrectly states that the Supreme Court in *Lane* held that "Lane's speech about corruption in a public program and misuse of state funds, *while made under his official duties* as director, was 'obviously' a matter of public concern." (Docket Entry No. 8 at 12) (emphasis added) (quoting *Lane*, 573 U.S. at 241). Rather, the Supreme Court held that "[t]he *content* of Lane's testimony—corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern." *Lane*, 573 U.S. at 241 (emphasis added). But the Supreme Court also held that "it is clear that Lane's sworn testimony is speech as a citizen," *id.*, which distinguishes that case from this one.

that either individual defendant obviously violated clearly established law. *Cf. Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020) ("The standard for obviousness is sky high" and requires matching "the clarity . . . perceived in other obvious cases.").

Because Hernandez has failed to allege facts showing that all reasonable officers would have known that his report was protected by the First Amendment, Smith and O'Brien are entitled to qualified immunity. All claims against them in their individual capacities are dismissed.

## IV. Conclusion

The individual defendants' motion to dismiss, (Docket Entry No. 5), is granted. All claims against Smith and O'Brien are dismissed. If Hernandez seeks leave to amend, he must file his motion with his proposed amended complaint attached no later than April 11, 2025, and the defendants may then respond.

SIGNED on March 25, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge